IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ROBERT S. PIERCE, | Cause No. CV 19-58-BU-BMM |
| Petitioner, | |
| vs. | ORDER |
| JIM SALMONSEN; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

Pending before the Court is pro se petitioner Robert S. Pierce's Amended Petition filed pursuant to 28 U.S.C. § 2254. *See* (Doc. 5.)  Also, pending are Pierce's Motion for Order (Doc. 40), Motion Pursuant to Rule 60(b) (Doc. 42), and Motion to Appoint Counsel.  (Doc. 48.) The Court will address each motion in turn.

The Court must screen all actions brought by prisoners who seek relief.  28 U.S.C. § 1915(a).  The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted.  28 U.S.C. § 1915A(b)(1), (2). It appeared that many of the claims contained in Pierce's petition were procedurally defaulted. The Court advised Pierce that unless he could demonstrate a basis to excuse the default, the claims would be dismissed.  (Doc. 38.)  Pierce timely responded to the Court's

order.  (Doc. 39.)

As explained herein, Pierce's petition will be dismissed. Pierce's claims are either procedurally defaulted, not cognizable in federal habeas, or do not survive deferential review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

## I.    Background

The following facts, presumed to be correct under 28 U.S.C. §2254(e)(1), are taken from the Montana Supreme Court's decision affirming Pierce's convictions on direct appeal.  Additional facts will be supplied where necessary.

> M.R.'s father died prior to her birth in 1998 and M.R. was raised by her mother Malissa (Mother). M.R.'s paternal grandmother (Grandmother) and Grandmother's husband (Pierce) assisted Mother with raising M.R. and her siblings. M.R. frequently spent weekends and holidays with Pierce and Grandmother; camped together; hunted together; and did many family activities together.

> On February 5, 2012, when M.R. was fourteen, Mother had a Super Bowl party that Grandmother and Pierce attended. Mother noticed that M.R. was distant and cross towards her. M.R. was on the phone with her boyfriend during the party and was told by her boyfriend that she was a "prude." The accusation prompted M.R. to respond to her boyfriend that she had been touched by Pierce. Following this disclosure, M.R.'s boyfriend insisted that M.R. tell her mother or, alternatively, that he would tell M.R.'s mother the next day. After everyone left the party, M.R. told Mother about Pierce's abuse.

> M.R. disclosed to Mother that Pierce first touched her when she was in the third grade while M.R. was visiting at Grandmother's home. M.R. was alone playing video games when Pierce sat down next to her. Pierce unbuttoned M.R.'s pants, held her down with one hand, slipped his other hand down her pants, and put his fingers inside of her. When M.R. struggled, Pierce held

her down and covered her mouth when she tried to scream for Grandmother. Pierce told M.R. not to tell anybody because he would get into a lot of trouble. M.R. described that "it hurt really bad" when Pierce touched her vagina, and she had trouble urinating later "because it burned so bad." M.R. could feel Pierce's penis touching her leg through his pants. Afterwards, M.R. ran downstairs and sat with Grandmother, but M.R. did not tell Grandmother what Pierce had done.

M.R. also disclosed to Mother two other incidents when Pierce abused her. These incidents occurred when the family was traveling. Once, in a Missoula hotel, M.R. was sleeping in bed with Grandmother and Pierce. Grandmother was facing away from M.R. and Pierce began to suck on M.R.'s breasts. M.R. responded by moving to the other side of Grandmother in the bed. The second time was at a hotel in Kalispell. While in bed with Grandmother and Pierce, Pierce touched M.R.'s breasts and placed her hand on his penis. M.R. again moved, but this time M.R. got into a different bed with her brother.

Following these disclosures, Mother testified M.R. sat in her arms and they both held each other and cried through the night. That morning, Mother called her friend, Assistant Chief of Police of Anaconda, Bill Sather (Sather), asking for guidance. Mother testified she "had no idea what to do, and [she] knew he would have some options." Sather informed Mother that he was a mandatory reporter and advised Mother to tell Grandmother of M.R.'s disclosures.

After speaking with Sather, Mother called her family counselor, Heidi Matlack-Larson (Matlack-Larson), who similarly informed Mother that she was a mandatory reporter. Matlack-Larson advised Mother to tell Grandmother of M.R.'s disclosures. Pierce was in Las Vegas at the time so Mother went over to Grandmother's home and told her what M.R. had said. Both agreed that they should confront Pierce together, but were unable to reach him on the phone. Later, after Mother had left Grandmother's home, Grandmother spoke to Pierce and told Pierce of M.R.'s disclosures. Grandmother's conversation with Pierce occurred before Mother or M.R. had confronted Pierce about M.R.'s disclosures.

After Mother learned of Grandmother's conversation with Pierce, Mother called Pierce herself. Pierce said that M.R. was lying and had made up her story because of peer pressure; specifically, that M.R.'s friends were talking about being molested or M.R.'s boyfriend set M.R. up to tell the story.

Pierce was calm while talking to Mother and not angry. Mother explained to Pierce that if he admitted to M.R.'s allegations the family would get him help; but if he continued to deny M.R.'s allegations and "make my daughter out to be a liar, you will be prosecuted." When Pierce learned that Mother had contacted Sather he became very angry. The phone call ended when Mother lost reception.

M.R. became angry when she learned from Mother that Pierce had said she was lying. Mother and M.R. decided to call Pierce. When Pierce answered, M.R. did not tell him that Mother was also listening in on the phone call. M.R. asked Pierce why he was lying and would not just admit to what he had done to her. Pierce asked M.R. why she was bringing this up now and to whom M.R. had made her disclosures. Pierce told M.R. that this could ruin his career and it was killing Grandmother. Pierce suggested that maybe it was M.R. who had touched him, that he would turn the story around and tell people she had touched him, and that her life would be horrible if she continued to insist her story was true. Pierce threatened M.R. that he was in a tall building and that he might jump from the window. M.R. told Pierce he had a choice to admit that he did this to her, in which case they would get him help and the matter would end. Pierce insisted he did not abuse her. At this point, Mother took the phone from M.R. and accused Pierce of being a pervert, that he was going to die, that he would be prosecuted, and that she was calling the police. Mother hung up the phone. Pierce called back and said he would not admit to anything and "I sign [Sather's] paychecks." Mother then yelled at Pierce again and hung up. Soon afterwards, Sather picked up Mother and M.R. and took them to the police station where they provided written statements.

Sather initiated an investigation of Pierce. However, the case was quickly transferred to the Division of Criminal Investigation (DCI) due to Pierce's position as Deer Lodge County Commissioner. DCI Agent Phil Matteson (Agent Matteson) was assigned to the case and made a physical copy of the County's law enforcement file. The Anaconda-Deer Lodge County Department of Law Enforcement (A-DLCDLE) uses a computer system named "Swift" to store investigative reports. After the investigation had begun, Sather produced a report (Sather Report) which was not included in the Swift program and apparently was also not contained within the physical file that Agent Matteson copied. Agent Matteson subsequently retired and the case was taken over by DCI Agent Sullivan. Agent Sullivan first discovered the Sather Report on April 16, 2013, just a few days before the

scheduled trial date of April 22, 2013, when he went to retrieve a better copy of a different document from A-DLCDLE. Neither Agent Sullivan nor either party's counsel had seen the Sather Report prior to April 16, 2013. Upon learning of the Sather Report, the State immediately filed a Notice of Compliance and provided a copy of the Sather Report to the defense.

In response to disclosure of the Sather Report, Pierce filed a motion for sanctions and requested additional time to locate and interview witnesses identified in the document. The District Court held a hearing on April 18, 2013, during which Agent Sullivan explained the contents of the Sather Report and discussed whether the substance of the information contained within the Sather report had already been provided to the defense. The Sather Report was admitted into evidence. The State could not explain why the Sather Report was not in the Swift program, why it was not part of the original copy of the Swift file, or how it subsequently was placed into the Swift file where Agent Sullivan discovered it. However, Agent Sullivan testified the only new information not previously disclosed to Pierce were alleged comments made by Chief Executive Officer of Anaconda, Becky Guay (Guay), that Pierce was the "real victim" and that people presumed Pierce was "guilty until proven innocent." Agent Sullivan testified that the information did not suggest that Guay had any personal knowledge about the case, and that it appeared her statements were merely her personal belief. Relying on *State v. Golder*, 2000 MT 239, 301 Mont. 368, 9 P.3d 635, the court held that the record did not support Pierce's claim of undue surprise or prejudice and the court, accordingly, denied Pierce's motion for sanctions. Pierce's jury trial began on April 22, 2013.

During opening statements the State described the struggles M.R. had coming forward with her disclosures and how it similarly would be difficult for M.R. to continue to speak of her abuse at trial. The State explained that Mother wanted to keep M.R.'s disclosures within the family and that Mother told Pierce if he would admit to her and M.R. that he had committed the offenses the matter would be kept within the family. Pierce did not object at any time during the State's opening statement.

The following morning Pierce moved for a mistrial. Pierce alleged the State's opening statement improperly sought sympathy for M.R. and that the State sought to "comment, imply or otherwise impress upon the jury that the Defendant is somehow committing another crime, or further victimizing M.R. by not confessing when confronted by M.R. and her mother [ ] and by

exercising his right to a trial." The State argued that it permissibly summarized what actually happened and the evidence that would be presented. The State denied having suggested that Pierce should be punished for invoking his right to trial. The District Court denied Pierce's motion for mistrial, concluding the State had not acted improperly and had not commented on Pierce's invocation of a constitutional right.

*See State v. Pierce*, 2016 MT 308 at ¶¶ 3-14, 385 Mont. 439, 384 P. 3d 1042

(*Pierce I*).

The jury found Pierce guilty of Sexual Intercourse without Consent and Sexual Assault on April 25, 2013. The Montana state district court sentenced Pierce to a 40-year sentence at Montana State Prison, with 15 of the years suspended, for the Sexual Intercourse without Consent. Pierce received a 25-year prison sentence for Sexual Assault on December 10, 2013. The Montana state district court ordered that the sentences were to run concurrently and imposed a 10-year parole restriction. Judg. (Doc. 25-67 at 6.) Pierce maintained his innocence throughout trial and sentencing. (*Id.* at 2-3, 11.)

## II.    Procedural History

Pierce's procedural filing history in this Court and the Montana state courts has been set forth at length in the Court's prior orders. *See e.g.,* (Doc. 38 at 2-22.) The Court will discuss the history briefly below, with additional facts provided as needed for analysis.

### i.    Direct Appeal

Pierce timely filed a direct appeal arguing that the trial court (1) abused its

discretion in denying him a continuance of the trial due to a late report disclosure and (2) erred in denying his motion for a mistrial based upon improper comments made by the prosecution.  The Montana Supreme Court affirmed Pierce's convictions and sentence after concluding that the trial court had not abused its discretion and the prosecutor had not made improper comments during the State's opening argument.  *See Pierce I*, 2016 MT 308.

### ii.     42 U.S.C. § 1983/Civil Proceedings

Pierce filed a civil suit against law enforcement officers Tim Barkell; Sather; Steve Barclay; M.R.; M.R.'s mother; and Anaconda-Deer Lodge County (collectively "Defendants"). Defendants removed the matter to this Court on November 20, 2015. *See Pierce v. Barkell, et al*., Cause No. CV-15-71-BU-BMM-JCL, Not. (filed Nov. 20, 2015.)

Pierce generally alleged that Defendants conspired against him in relation to the criminal investigation and charges, which he maintained were either fabricated or unsubstantiated.  Pierce alleged that M.R. and her mother made false statements of sexual misconduct that led to his criminal prosecution and ultimate conviction. *See e.g., Pierce v. Barkell, et al*., Cause No. CV-15-71-BU-BMM-JCL, Find. & Rec. at 2 (filed June 30, 2016.)  The Court ultimately dismissed the matter when the Court determined the federal claims to be barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Court remanded the state law claims

to the Montana state district court for resolution.  *See Pierce v. Barkell, et al.*,

Cause No. CV-15-71-BU-BMM-JCL, Or. (D. Mont. Aug. 31, 2016.)

It is noteworthy that in his filings, Pierce continues to insist that the Court

made findings that Pierce's convictions were invalid and suggested he was

wrongfully convicted and/or actually innocent of the sexual offenses.  *See e.g.*,

(Doc. 5 at 17, 24, 27, 75, 76, 77, 88, 89.) The Court has made no such findings.

The Court explained to Pierce that, under *Heck*, "in order to recover damages for

an allegedly unconstitutional conviction or imprisonment, or for other harm caused

by actions whose unlawfulness would render a conviction or sentence invalid, a §

1983 plaintiff must prove that the conviction or sentence has been reversed on

direct appeal," or otherwise declared invalid, called into question by the issuance

of a habeas writ, or expunged.  *Pierce*, Cause No. CV-15-71-BU-BMM, Or. at 3,

(D. Mont. 8/31/16) (*citing Heck,* 512 U.S. at 486-487). Pierce had an appeal

pending in Montana State Court at the time of his filing in this Court. This pending

appeal prevented Pierce from making the requisite showing. The *Heck* doctrine

prohibited consideration of his § 1983 claims.  The Court never stated, however,

that Pierce's Montana state convictions were invalid as a matter of law or that he

wrongfully had been convicted.

The Montana state district court granted summary judgment in favor of

Defendants and the Montana Supreme Court affirmed "because Pierce was

collaterally estopped from re-litigating the issues already decided in his criminal case." *Pierce v. Barkell et al*., No. DA 17-0472, 2018 MT 53N, ⁋ 7, 2018 WL 1392218 (*Pierce II*).  The Montana Supreme Court further determined that Pierce was attempting to raise matters that should have been raised in his criminal proceedings, and thus, his civil suit constituted an impermissible collateral attack on his criminal convictions.  *Id*. at ¶ 15.

### iii.    Postconviction Relief Proceedings

Pierce filed a petition for postconviction relief, in July of 2017, raising 12 separate grounds for relief.  *See* (Doc. 26-2 at 2-459.)  Relative to the present proceedings, Pierce argued that the State impermissibly used or withheld evidence related to female underwear; M.R.'s testimony at trial differed from statements given in pretrial forensic interviews; trial counsel was ineffective for failing to call certain witness at trial and failing to interview M.R. and her mother; appellate counsel was ineffective for failing to raise a record based claim regarding M.R.'s pretrial forensic interviews that were not admitted into evidence at trial; cumulative error prevented a fair trial; and that he is actually innocent. The Montana state district court denied Pierce's petition on the merits in June of 2018.  (Doc. 25-80.)  Pierce timely appealed.  (Doc. 25-81.)  The Montana Supreme Court affirmed the denial of Pierce's petition.  *Pierce v. State*, No. DA 18-0404, 2019 MT 124N, 2019 WL 2265299 (*Pierce III*); *see also* (Doc. 25-99). The Court will discuss in greater

detail below both the PCR proceedings and the appeal therefrom.

### iv.    State Habeas Proceedings

Pierce filed a petition for habeas corpus relief in Montana state district court in September of 2017.  (Doc. 29-1.)  Peirce reiterated his contention that M.R. had provided perjured trial testimony and that the falsity of this testimony was apparent when compared to her pretrial interviews.  (*Id*. at 3-4.)  Pierce argued that the State's reliance upon these false statements violated his right to due process and resulted in his illegal incarceration.  (*Id*.)  The Montana state district court denied Pierce's petition based upon Mont. Code Ann. § 46-22-101.  (Doc. 29-6.)  The statute provides as follows:

> The writ of habeas corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal.

Mont. Cod Ann. § 46-22-101.

Pierce then filed an original petition for writ of habeas corpus in the Montana Supreme Court seeking release from his illegal detainment.  *See Pierce v. Guyer*, OP 19-0552, 2019 WL 4954992, Or. at 1 (Mont. Oct. 8, 2019). Pierce argued that the prosecutor used false information in the charging documents. Additionally, Pierce raised claims surrounding new evidence, perjury, and due process violations.  Pierce contended that the Montana state district court lacked subject matter jurisdiction, that there was a lack of probable cause to indict him,

and that a double jeopardy violation had occurred. (*Id*. at 2.) The Montana

Supreme Court determined that a writ of habeas corpus was not available to Pierce

to attack his sentence because he had been found guilty of the criminal offenses

and already had exhausted his remedy of appeal. *Id*., *citing* Mont. Code Ann. § 46-

22-101(2); *Lott v. State*, 2006 MT 279, ¶¶ 4, 9, 334 Mont. 270, 150 P. 3d 337.

Pierce could not demonstrate that his incarceration was illegal, and that he was

procedurally barred from relitigating the claims via habeas corpus, because the

issues were, or could have been raised on direct appeal. *Id*.

### v.    Sentence Review Proceedings

Pierce then sought review of his sentence with the Montana Sentence

Review Division ("SRD") after he filed his petition in this Court. The Court stayed

his federal proceedings. (Doc. 10.) The SRD issued its decision affirming Pierce's

sentence on August 14, 2020. (Doc. 14-1.) Pierce next attempted post-decision

relief from the SRD with various filings. *See generally* (Docs. 17, 17-1, 17-2, 17-

3.) At the conclusion of Pierce's SRD proceedings, this Court lifted the stay that

had been imposed in the instant matter. (Doc. 19.)

### III.   Pierce's Claims

In his petition before this Court, Pierce advances the following claims:

(1) judicial bias, (Doc. 5 at 23-31);
(2) lack of probable cause/failure to prove every element of the charging
   documents, (*id*. at 32-44);
(3) Montana Supreme Court's failure to rule on claims, (*id*. at 45-49);
(4) actual innocence, (*id*. at 55-72);

(5) ineffective assistance of trial counsel, (*id*. at 73-84);

(6) prosecution's knowing use of perjured testimony, (*id*. at 85-108);

(7) Confrontation Clause violation; (*id*. at 109-116);

(8) ineffective assistance appellate counsel, (*id*. at 118-129);

(9) unconstitutionality of MCA §46-21-105(2), (*id*. at 130-136);

(10) false grooming evidence, (*id*. at 137-141); and,

(11) cumulative error, (*id*. at 142-43)

Pierce asks this Court to remand the matter back to the Montana state district court with an order to release him from custody and dismiss the charges.  *Id*. at 143.  Pierce seeks immediate release from his illegal incarceration.  *Id*.

## IV.  Exhaustion/Procedural Default of Claims 1, 2, 3, 7, 8, and 9

In a prior order, this Court informed Pierce that it appeared five of his claims (Claims 1, 2, 3, 7, and 9) were wholly unexhausted and a portion of a remaining claim (Claim 8) was unexhausted.  (Doc. 38.) The Court provided Pierce with an opportunity to show cause as to why these claims should not be dismissed.  (*Id*.) Pierce timely responded.  (Doc. 39.)

Pierce concedes that Claim 7, alleging a Confrontation Clause violation, is unexhausted and he is voluntarily abandoning the claim.  *See* (Doc. 39 at 7.) The Court dismisses Claim 7.  Pierce also states he is voluntarily abandoning a portion of his ineffective assistance of appellate counsel claim in Claim 8.  It appears that Pierce disagrees, however, with the Court's assessment of Claim 8.  Accordingly, it will be addressed below.

"In conducting habeas review, a federal court is limited to deciding whether

a conviction violated the Constitution, laws, or treaties of the United States."
*Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2254(a).  "[F]ederal
habeas corpus relief does not lie for errors of state law."  *Swarthout v. Cooke*, 562
U.S. 216, 219 (2011)(citations omitted); *see Estelle*, 502 U.S. at 63 ("[I]t is not the
province of a federal habeas court to reexamine state-court determinations on state-
law questions.").  "[T]he availability of a claim under state law does not itself
establish that a claim was available under the United States Constitution."  *Dugger
v. Adams*, 489 U.S. 401, 409 (1989).  A petitioner "may not…transform a state-law
issue into a federal one merely by asserting a violation of due process."  *Langford
v. Day*, 110 F. 3d 1380, 1389 (9ᵗʰ Cir. 1996).

The Court previously advised Pierce of the exhaustion of state remedies
requirement.  "Before seeking a federal writ of habeas corpus, a state prisoner must
exhaust available remedies, thereby giving the State the opportunity to pass upon
and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*,
541 U.S. 27, 29 (2004); see also 28 U.S.C. § 2254(b)(1).  "To provide the State
with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in
each appropriate state court."  *Baldwin*, 541 U.S. at 29 (citations omitted).  Fair
presentation requires a prisoner to "clearly state the federal basis and federal nature
of the claim, along with relevant facts."  *Cooper v. Neven*, 641 F. 3d 322, 326 (9ᵗʰ
Cir. 2011).

Pierce was also advised that it appeared state procedural bars prevented this Court's review. "A federal court may not hear a habeas claim if it runs afoul of the procedural bar doctrine." *Cooper*, 641 F. 3d at 327. Under this doctrine, a claim is procedurally defaulted and consequently barred from federal review "if the state court denied the claim on state procedural grounds" or "if [the] claim is unexhausted but state procedural rules would now bar consideration of the claim." *Id*.; *see also Martinez v. Ryan*, 566 U.S. 1, 9 (2012)("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.") To preclude federal review, the state procedural rule must be a "nonfederal ground adequate to support the judgment" and "firmly established and consistently followed." *Martinez*, 566 U.S. at 9.

To obtain review of a procedurally defaulted claim, a petitioner must show "cause for the default and resulting prejudice, or that failure to review the claims would result in a fundamental miscarriage of justice." *Moorman v. Schriro*, 426 F. 3d 1044, 1058 (9th Cir. 2005). The latter requires a showing of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Poland v. Stewart*, 117 F. 3d 1094, 1106 (9th Cir. 1997). With these principles in mind, the Court now turns to Pierce's unexhausted and/or procedurally defaulted claims.

### i.     Claim 1- Judicial Bias

Pierce states that three separate district court judges presided at various points in time during his underlying state court proceedings,. (Doc. 5 at 23-24.) Pierce appears to assert that the manner in which these substitutions occurred violated state law and judicial cannons, thereby creating an appearance of impropriety. (*Id*. at 24.) Pierce additionally claims that the Montana state district court restricted his postconviction proceedings by not scanning all of the pertinent documents into the record. (*Id*. at 24-7.) Pierce further asserts that the Montana Attorney General's Office and Montana Supreme Court exhibited bias in their review of the voluminous postconviction documents on appeal. (*Id*. at 28-30.) Pierce concludes that all of these factors, taken together, resulted in prejudice to him. (*Id*. at 31.) Pierce states that this claim has been properly exhausted. (Doc. 39 at 4-5, 7.) Pierce believes that the Montana State Courts addressed this claim in conjunction with Claim 2 of his postconviction appeal opening brief and was included in an appendix that he filed with the Montana Supreme Court on November 16, 2020. (*Id*.)

The Court notes that in his postconviction proceedings, the 12 claims raised by Pierce were summarized, according to the Montana state district court, in its order denying Pierce relief. *See* (Doc. 25-80 at 3); *see also* (Doc. 26-2 at 7-11) Pierce argued on appeal from the denial of his PCR petition that the Montana state district court abused its discretion when it denied him an evidentiary hearing and

denied his PCR petition for failure to attach affidavits, records, or other evidence. *See* (Doc. 25-81 at 20-23.)  Pierce questioned the Montana state district court's ethics because a number of voluminous documents purportedly had not been scanned into the record.  Pierce further believed bias was demonstrated when the Clerk of Court informed him that although not scanned, the voluminous attachments would be available for viewing by the public or court personnel.  (*Id*. at 21-22.)

Pierce did not raise this issue as a stand-alone judicial bias claim. It instead serves as part and parcel of his abuse of discretion claim. The Montana Supreme Court determined that none of the documents attached to Pierce's petition met the requirements of Mont. Code Ann. § 46-21-104(1)(c), and that a letter from the Clerk of Court demonstrated that the documents did not need to be scanned in order for the Montana state district court to consider them in the PCR proceedings. *Pierce v. State*, No. DA 18-0404, 2019 MT 124N, ¶ 8, f.n. 2 (*Pierce III*).

Moreover, Pierce never presented the wide-ranging judicial bias claim to the Montana state courts that Pierce attempts to put before this Court. A review of the record reveals that Pierce did not "clearly state the federal basis and federal nature" of his judicial bias claim, along with the relevant facts, as necessary to meet the fair presentation requirement.  *See Cooper*, 641 F. 3d at 326.  Pierce's contention that he exhausted Claim 1 is incorrect.  State procedural rules would now bar

consideration of this claim. The claim will be dismissed as unexhausted and procedurally defaulted.

### ii.    Claim 2- Lack of Probable Cause

Pierce argues that the State had no basis to charge him, lacked probable cause, and failed to prove every element in the charging documents. (Doc. 5 at 32.) Pierce failed to raise this claim on direct appeal. *See* (Doc. 25-68 at 27-47.) Pierce believes that he properly presented this claim to the Montana Supreme Court on appeal from his PCR petition by filing a secondary supplemental appendix. Because the State failed to object to the filing of the appendix or respond to issues raised in the document, Pierce asserts the State conceded this claim. (Doc. 5 at 32-34, 39.)

Pierce also filed a motion to dismiss the underlying charges during the PCR appeal on the basis that the State lacked probable cause to charge him. (Doc. 25-96.) The Montana Supreme Court denied and dismissed the motion. The Montana Supreme Court explained that it was not a fact-finding court and that Pierce's motion for dismissal of the underlying charges had not been appropriately filed. Pierce's argument should have been presented, if at all, in his opening or reply briefs on appeal. (Doc. 25-98.) Pierce reiterated this same argument in his petition for rehearing, *see* (Doc. 39-1 at 1-7), to which the State objected. (*Id*. at 8-14.) The Montana Supreme Court denied Pierce's petition for rehearing. (*Id*. at 15.)

Pierce also argues that he properly raised this claim with the Sentence Review Division, including discussing the filing of the "second appendix" with the Montana Supreme Court. Pierce points to his request to the SRD to remand his case back to the district court for resentencing or dismissal, based upon the "circumstances of the crime." *See* (Doc. 39 at 4) (referencing Doc. 17-3 at 7, 8, 41-54.)

As this Court previously noted, Pierce subsequently attempted to present this claim to the Montana Supreme Court in a petition for habeas corpus relief.  Among the claims raised in the habeas petition, Pierce argued that the Montana state district court lacked subject matter jurisdiction and that there was a lack of probable cause to indict, resulting in a double jeopardy violation.  *See Pierce v. Guyer*, OP 19-0552, 2019 WL 4954992, at 1-2 (Mont. Oct. 8, 2019). The Montana Supreme Court informed Pierce that he could not use habeas corpus to attack his sentence because he had been found guilty and had exhausted his remedy of appeal.  *Id*. at 2, *citing* MCA § 46-22-101(2).

In relation to the fair presentation requirement, the Court first observes that Pierce did not raise his probable cause claim in his direct appeal.  Similarly, Pierce failed to raise the claim in Pierce's PCR petition in the Montana state district court. *See* (Doc. 25-80 at 3.) Pierce also failed to present this argument as a claim in his PCR appellate brief. *See generally*, (Doc. 25-81.)  Pierce instead attempted to raise

the claim in a motion filed outside the briefing on the PCR appeal and in a petition for habeas corpus relief.

In order to meet the fair presentation requirement, Pierce needed to apprise (1) the appropriate state courts (2) of the factual and legal bases of his claim (3) in a procedurally appropriate manner.  Pierce did not present this claim on direct appeal, and he did not include it in his PCR petition filed with the Montana state district court.  The claim was not presented to the appropriate state court using Montana's established appellate review procedures.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *Baldwin v. Reese*, 541 U.S. 27 (2004).  Accordingly, Pierce did not meet the first requirement.

An argument could be made that Pierce provided the factual and legal bases for his lack of probable cause claim. The record establishes, however, that he did not do so in a procedurally appropriate manner.  This prong requires that prisoners must present their claims to the state courts in a manner that permits consideration in the normal course of business to satisfy the exhaustion requirement.  *See Castille v. Peoples*, 489 U.S. 346 (1989).  Failing to present this claim on direct appeal or in his postconviction petition, and then attempting to raise the claim outside of his PCR appellate briefing via a motion to dismiss and in a second supplemental appendix, was not procedurally appropriate.  Pierce's attempt to raise this claim in a habeas corpus proceeding was not the appropriate proceeding in

which to fairly present the claim.  Review of the claim was precluded by Mont. Code Ann. § 46-22-101(2).

Pierce's presentation of the claim to the SRD also was inappropriate.  The Sentence Review Division, codified at Mont. Code Ann. §§ 46-18-901 to -905, reviews questions of equity "such as length of sentence or proportionality to the crime." *Jordan v. State*, 2008 MT 334, ¶ 18, 346 Mont. 193, 194 P. 3d 657.  A criminal defendant seeking to challenge the legality of a sentence must follow the method established in Mont. Code Ann. § 46-20-101(2), which provides that the only method of review in criminal cases shall be by notice of appeal to the Montana Supreme Court.  *See State v. Osborn*, 2015 MT 48, ¶ 14, 378 Mont. 244, 343 P. 3d 1188 (citations omitted).  The SRD lacked jurisdiction to resolve Pierce's probable cause challenge surrounding the circumstances of his underlying offense. Pierce has not satisfied the fair presentation requirement. This claim remains unexhausted.

### iii.    Claim 3- Montana Supreme Court's Failure to Rule on Claims

Pierce alleges the Montana Supreme Court failed to rule on several of his claims.  Pierce again insists that the prosecutors used perjured testimony and suppressed M.R.'s prior statements given in transcripts or recordings, and they were unavailable to use for impeachment purposes.  (Doc. 5 at 45-46.)  Pierce also reasserts his belief that his § 1983 case confirmed that M.R. and her mother both

committed perjury during the criminal trial.  (*Id*.)  Pierce reiterates his argument that the Montana Supreme Court failed to rule on his lack of probable cause claim that was presented in his appendices to his brief on PCR appeal.  (*Id*. at 46, 48-49.) Pierce also seems to suggest that there was disparity in the view of his exhaustion in the state courts.  Pierce claims that the Montana Supreme Court told him he had fully exhausted his remedies regarding his 2013 conviction and had no additional avenues available to him, but the SRD advised him in 2019 that they could not consider his application until pending motions in the state district court were resolved.  (*Id*. at 47.)  Pierce suggests that his right to due process was violated. (*Id*. at 45, 48.)

In response to the Court's order regarding failure to exhaust this claim, Pierce refers the Court to two documents from his SRD proceedings: his "Notice of Inadequate Counsel During Critical Stage of Sentence Review," (Doc. 15-1 at 5-13), and the SRD's order denying him relief. (Doc. 18-1.)  The SRD essentially informed Pierce that it only had the authority to correct a purportedly unlawful sentence, and that it lacked authority to vacate a conviction or remand a matter to the district court. An offender needed to pursue direct appeal or postconviction relief in order to vacate a conviction.  (*Id*. at 9-10.)

As a preliminary matter, the exact nature of Pierce's federal claim remains unclear.  Pierce makes passing reference to the Fourteenth Amendment's Due

Process Clause, but does not provide further reasoning to support the claim. A state law issue cannot be transformed into a federal constitutional claim merely by invoking the specter of a due process violation. *Langford*, 110 F. 3d at 1389.  This court remains limited to addressing claimed violations of the U.S. constitution and federal laws or treatises. *Estelle*, 502 U.S. at 68.   The claim does not appear to be cognizable in federal habeas.

Even if this Court were to construe the claim as stating a federal violation, it remains unexhausted for the same reasoning set forth above in relation to Claim 2. Pierce failed to raise a probable cause challenge in his direct appeal. Pierce's subsequent attempts to exhaust in different state court divisions, including the SRD, and by various means cannot cure the lack of fair presentation.  This claim was never presented to the appropriate courts or in the procedurally appropriate manner.  The Montana Supreme Court should not be faulted for Pierce's failure to follow the established appellate and postconviction procedures. This Court is precluded from reviewing the claim in federal habeas because it is unexhausted. *Baldwin*, 541 U.S. at 29;  28 U.S.C. § 2254(b)(1).  The claim will be dismissed.

### iv.    Claim 8- IAC of Appellate Counsel

In his amended petition, Pierce claims that appellate counsel provided deficient performance when she failed to raise a Confrontation Clause claim challenging M.R.'s pretrial forensic interview that was not introduced at trial.

(Doc. 5 at 119.)  Pierce also claims that his appellate counsel was ineffective for failing to challenge the lack of jurisdiction and probable cause issue, asserting both were stronger than the two issues presented on appeal by appellate counsel.  (*Id*. at 121-22).  Pierce also claims that appellate counsel should have raised a claim of double jeopardy/multiplicity and was ineffective for failing to do so.  Pierce argues that he could not be charged and/or convicted of both Sexual Intercourse without Consent and Sexual Assault because the incidents arose from the same transaction. (*Id*. at 124-25.)  Finally, Pierce argues appellate counsel was ineffective by failing to challenge false information contained within his Presentence Investigation ("PSR") Report.  (*Id*. at 125-8.)

In its order to show cause, this Court acknowledged that the Confrontation Clause portion of Pierce's IAC of appellate counsel claim had been properly exhausted. The Court will address this claim below. Pierce conceded that the lack of jurisdiction/probable cause portion of this claim remains unexhausted as it relates to appellate counsel's performance, and he has voluntarily abandoned this claim. (Doc. 39 at 7.)  This portion of the claim will be dismissed.  The Court turns, then, to the Double Jeopardy/Multiplicity portion of the claim, along with the claim regarding false information in the PSI report.

Pierce asserts that he presented these two sub-claims to the SRD in his Brief in Support of Remand Back to District Court for Resentencing or Dismissal and

Motion to Remand Case Back to District Court for Resentencing or Dismissal,

filed in April of 2020.  (Doc. 39 at 5) (referencing brief and motion found at (Doc.

at 2-3, 24-30.))  Presentation of substantive legal issues not related to the equity of

a sentence falls outside the scope of the SRD.  Pierce's presentation of these two

subparts of his IAC of appellate counsel claim do not constitute proper exhaustion.

Accordingly, for the reasons set forth above, Pierce's IAC of appellate counsel

claim, excluding the confrontation clause portion, will be dismissed as

unexhausted.

### v.      Claim 9- Unconstitutionality of Mont. Code Ann. § 46-21-105(2)

Pierce alleges that Mont. Code Ann. § 46-21-105(2) is unconstitutional.

This statue provides as follows:

> When a petitioner has been afforded the opportunity for a direct appeal of
> the petitioner's conviction, grounds for relief that were or could have been
> raised on direct appeal may not be raised, considered, or decided in a
> proceeding brought under this chapter.  Ineffectiveness or incompetence of
> counsel in proceedings on an original or an amended original petition under
> this part may not be raised in a second or subsequent petition under this
> part."

Mont. Code Ann. § 46-21-105(2). Pierce acknowledges the claim was never

"presented with a title or subtitle," but it was extensively argued by him and that

the State responded to the argument in its brief.  Pierce asserts that the claim has

been exhausted. *See* (Doc. 39 at 8.) A review of the record reveals that the statute

was cited, along with *Massaro v. United States*, 538 U.S. 500 (2003), in an

addendum to his PCR petition.  (*See* Doc. 26-2 at 356-60.)  In his PCR appeal,

Pierce again alleged that the statute conflicted with *Massaro*, in conjunction with

his argument that he should not be precluded from raising claims on

postconviction, and appeal therefrom, including IAC claims, that were not raised

on direct appeal.  (Doc. 25-81 at 29-30.) In response, the State presented the

following argument:

> Further, Pierce's argument about *Massaro v. United States*, 538 U.S. 500
> (2003), is misplaced.  In *Massaro*, the United States Supreme Court held that
> the failure of a federal prisoner to raise an ineffective assistance of counsel
> claim on direct appeal does not bar the prisoner from raising the claim in a
> subsequent proceeding under 28 U.S.C. § 2255.  *Massaro*, 538 U.S. at 504-
> 09.  That holding has no impact on Montana's procedure for addressing
> claims of ineffective assistance of counsel, which are governed by Mont.
> Code Ann. § 46-21-105(2) and this Court's case law.

Br. of Appellee, (Doc. 25-95 at 43.)

Contrary to Pierce's response to the show cause order, his reference to this

statute in his filings, and the State's contention that the *Massaro* case is inapposite

to Pierce's state claim, does not constitute fair presentation of the claim.  The claim

runs afoul of the procedural bar doctrine.  *See Cooper*, 641 F. 3d at 327.  Pierce has

not "clearly state[d] the federal basis and federal nature of the claim" nor has he

provided the requisite relevant facts in support.  *Id*. at 326.

Moreover, federal habeas relief remains unavailable for violations of state

law or for alleged error in the interpretation or application of state law.  *See

Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Estelle*, 502 U.S. at 67.  A federal

court will examine a state court's interpretation of its laws or constitution only where it is clearly shown that such state judicial interpretations violate fundamental rights guaranteed by the Constitution of the United States. *Bonin v. Calderon*, 59 F. 3d 815, 841 (9th Cir. 1995). Pierce has made no such showing. The state's highest court is the final authority on the law of that state. *Sandstrom v. Montana*, 442 U.S. 510, 516-17 (1979). The Montana state courts have consistently applied MCA § 46-21-105 and have declined to review issues that were not preserved for appeal in the district court. *See e.g.*, *Ellenburg v. Chase*, 2004 MT 66, ₱ 14, 320 Mont. 315, 87 P. 3d 473; *State v. Schmalz,* 1998 MT 210, ¶¶ 11–13, 290 Mont. 420, 964 P.2d 763; *State v. Spotted Blanket,* 1998 MT 59, ¶ 13, 288 Mont. 126, 955 P.2d 1347. Accordingly, Pierce's claim as it stands amounts to a disagreement with the application of Montana state law. It does not state a cognizable claim in federal habeas corpus. *See Estelle*, 502 U.S. at 67-68. This claim, too, will be dismissed.

### vi.    Conclusion

In his response to the show cause order, Pierce argued that all of these claims, with the exception of Claim 7 and a portion of Claim 8, were properly exhausted. The Court disagrees. Each of these claims remain unexhausted and/or procedurally defaulted.

Pierce seems to argue that the exhaustion and procedural default of each of

these claims should be excused because he is actually innocent of the crimes of conviction and not ruling on the claims would result in a fundamental miscarriage of justice. *See e.g.,* (Doc. 39 at 6.)  Pierce's actual innocence claim will be discussed in further detail below.  The Court finds, however, Pierce has failed to make the "truly extraordinary" showing that constitutional error has occurred and resulted in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 326 n. 42, 327 (1995); *see also House v. Bell*, 547 U.S. 518 (2006). For the same reason that he cannot establish a stand-alone claim of actual innocence, Pierce cannot use *Schlup's* actual innocence "gateway" to bypass the procedural bars preventing review of these claims.

## V.    §2254(d) Analysis of Remaining Claims 4, 5, 6, 10, 11, and portion of Claim 8

As explained above, Pierce's remaining claims were addressed by the Montana state courts on postconviction and postconviction appeal. Each claim was denied for lack of merit. This Court's consideration of the claims is constrained by the applicable standard of review.  The AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court subject only to the exceptions listed in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 89 (2011).  This Court cannot grant habeas relief under AEDPA unless the Montana state court's analysis "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or it "was based on an unreasonable

determination of the facts," *id*. § 2254(d)(2). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demand that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citation and quotations omitted).

i.   **Claim 4- Actual Innocence**

Pierce contends that he is actually innocent and should be afforded relief from his convictions. The Court first would observe that the U.S. Supreme Court previously has ruled that a stand-alone substantive claim of actual innocence is not cognizable in federal habeas. Federal habeas relief remains available only when a substantive claim of innocence is connected to an independent constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 400-05 (1993). The Ninth Circuit recently acknowledged that it is an open question whether a freestanding federal actual innocence claim is cognizable in a non-capital context. *Prescott v. Santoro*, 53 F. 4th 470, 482 (9th Cir. 2022) (*citing Taylor v. Beard*, 811 F. 3d 326, 334 (9th Cir. 2016) (en banc)). Assuming such a claim exists, the new evidence presented by the petitioner must meet the "extraordinarily high" threshold showing of actual innocence to prevail on such a claim. *Id*., *citing Herrera*, 506 U.S. at 417.

The Montana Supreme Court denied this claim for lack of merit. The Court must consider Pierce's innocence claim, if at all, under 28 U.S.C. § 2254(d). No clearly established federal law provides for a stand-alone actual innocence claim.

Pierce must show that the Montana state courts made an unreasonable determination of the facts under § 2254(d)(2) in rejecting his claim.

The PCR court noted that Pierce had failed to prove that the alleged constitutional violations occurred in denying Pierce's actual innocence claim. (Doc. 25-80 at 12.)  Pierce hinted at new evidence, but failed to present any newly discovered evidence in support of his petition.  The Montana state district court instead found that Pierce had only offered his own conclusory statements to support his claim.  (*Id*.)  The Montana Supreme Court affirmed this finding. *Pierce v. State*, No. DA 18-0404, 2019 MT 124N, 2019 WL 2265299 (*Pierce III*); *see also* (Doc. 25-99.)

The Montana Supreme Court noted that to prevail on a substantive actual innocence claim, Pierce needed to first "show by clear and convincing evidence that, but for procedural error, no reasonable juror would have found him [ ] guilty of the offense." *Id*., citing *Beach v. State*, 2009 MT 398, ⁋ 44, 353 Mont. 411, 220 P. 3d 667. In support of his actual innocence claim Pierce pointed to the following evidence: (1) documents from his post-trial civil case demonstrate he was wrongfully convicted; (2) Officer Sather impermissibly disclosed information to the media; (3) M.R.'s mother and Officer Sather conspired to get Pierce convicted; (4) the transcripts of M.R.'s pretrial interviews were deemed inadmissible but then improperly considered by the therapist conducting the psychosexual offender

evaluation; (5) the therapist determined that Pierce did not have a sexual interest in children. *Id*. at 4.

The Court first determined that Pierce misconstrued what happened in his § 1983 case. This Court did not determine that Pierce had been wrongfully convicted. *Id*. at 4, ⁋ 8, citing *Pierce v. Barkell*, 2016 WL 4540812 (D. Mont., Aug. 31, 2016). The Court next found the therapist's use of transcripts had no impact on the trial or verdict and did not support postconviction relief. *Id*. Third, the results of the psychosexual evaluation did not prove that Pierce did not commit the crimes of which he was convicted. Finally, the remaining issues identified by Pierce were properly denied by the Montana state district court based upon Pierce's failure to provide the requisite evidentiary or factual support. *Id*.

A petitioner challenging the substance of the state court's findings must show "that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Hibbler v. Benedetti*, 693 F. 3d 1140, 1146 (9th Cir. 2012) (*quoting Taylor v. Maddox*, 366 F. 3d 992, 1000 (9th Cir. 2004)). A petitioner challenging the adequacy of the fact-finding process must show no appellate court could reasonably hold "that the state court's fact-finding process was adequate." *Taylor*, 366 F. 3d at 1000.

Pierce points to the same evidence in his amended petition previously

presented to the Montana state courts in support of his actual innocence claim. This evidence includes what Pierce believes to be inconsistencies between statements M.R. gave in pretrial interviews and her trial testimony, purported admissions made by M.R.'s mother in the civil case, and the information that Officer Sather posted on a "salacious" website.  (Doc. 5 at 68-70.)  Pierce also points out that Dr. Scolatti's psychosexual evaluation found that he "does not have a sexual interest in children and is not a sex offender."  (*Id*. at 70.)

A credible claim of actual innocence requires a petitioner to support his allegations of constitutional error with new reliable evidence "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  *Schlup*, 513 U.S. at 324.  It remains petitioner's burden to demonstrate that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id*.  This standard does not mean that the new evidence creates a reasonable doubt regarding the petitioner's guilt, instead it requires that "no reasonable juror would have found the defendant guilty had the evidence been produced at trial."  *Id*.

Any purported inconsistencies between M.R.'s pre-trial forensic interviews and her trial testimony do not constitute newly discovered evidence.  Pierce and trial counsel knew of the substance of M.R.'s two forensic interviews and were free to use them for impeachment purposes during cross-examination.  Similarly,

Dr. Scolatti's psychosexual evaluation was completed on September 29, 2013, and was performed as part of the sentencing phase of Pierce's criminal proceedings. *See* (Doc. 26-1 at 17-42.)  The report does not constitute "newly discovered evidence" for purposes of an actual innocence claim.

Moreover, the report does not absolve Pierce of any wrongdoing.  It is true that Dr. Scolatti noted Pierce did not appear to have a persistent sexual interest in young children and deemed him a low risk to reoffend. (*Id*. at 39-40.) Dr. Scolatti remarked that Pierce maintained a position of innocence during the interview and denied any responsibility or culpability for the crime.  (*Id*. at 37, 40-41.)  Nowhere in the document can there be located a finding made that Pierce "is not a sex offender" or that he is innocent of the crimes of conviction.  Thus, even if it would have been possible to present the Scolatti evaluation to the jury, Pierce has not met his burden of showing that such information would have prevented a jury from convicting him of sexually assaulting M.R.

As to the remainder of this claim, the PCR court found that Pierce offered nothing more than his own conclusory statements in support of his claim for actual innocence.  (Doc. 25-80 at 12.)  The Montana Supreme Court affirmed this finding. In this Court, Pierce presents his own conclusions that Officer Sather contacted the media and in so doing, contaminated the jury pool.  Officer Sather's alleged act took place months before trial.  (*See e.g.,* Doc. 5 at 58-59, 70)(Pierce's asserts the

"Sather document" was disseminated 6 months prior to arrest and 14 months before trial.)  Thus, Pierce cannot show that this evidence is newly discovered or that it establishes his actual innocence.  Similarly, Pierce's interpretation and conclusory statements regarding perceived discrepancies between M.R. and her mother's statements and purported witness tampering does not constitute new reliable evidence.  Pierce and counsel knew of the statements each witness made to law enforcement at the outset of the investigation. Pierce has not met his burden and shown that no reasonable juror would have convicted him if presented with this evidence.

A review of the record before this Court demonstrates that the Montana Supreme Court's denial of this claim is supported by the record, and the fact-finding process employed was adequate.  *See Taylor*, 366 F. 3d at 1000. Accordingly, this Court must afford deference under § 2254(d)(2); this claim will be denied.

ii.    **Claim 5- IAC of Trial Counsel**

Pierce alleges that trial counsel was ineffective for failing to interview M.R. and her mother before trial and failing to introduce transcripts of their prior statements on cross-examination.  (Doc. 5 at 73-74, 76-77.) This claim appears similar to the IAC claims presented in his PCR proceedings, which was denied. Pierce also faulted counsel at the state-level for failing to call an expert witness.

He does not present that claim to this Court.

Under *Strickland*, an individual claiming IAC has the burden of demonstrating that (1) the attorney made errors so serious she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound strategy. *Id*.

The Montana Supreme Court determined that Pierce failed to establish that his counsel's decision not to interview M.R. and her mother fell below an objective standard of reasonableness under prevailing professional norms. *Pierce v. State,* 2019 MT 124N, ₱ 10; *see also* (Doc. 25-99.) The Montana Supreme Court noted

that an attorney's deliberate choice not to conduct pretrial interviews can be an acceptable trial strategy. *Id*., (*citing State v. Molder*, 2007 MT 41, ¶ 26, 336 Mont. 91, 152 P. 3d 722.). The Court determine that the trial transcript revealed that Pierce's trial counsel was familiar with both witnesses' statements and used them during their respective cross-examinations. *Id*. The Montana Supreme Court held that the Montana state district court properly had denied Pierce's PCR claim.

The Montana state courts rejection of Pierce's IAC claims limits the Court's ability to grant relief only to situation where that decision was contrary to or an unreasonable application of *Strickland*. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The U.S. Supreme Court has described federal review of a state court's decision on an IAC claim as "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S at 105.

Applying these standards to Pierce's IAC claim, it is apparent that he has failed to show the Montana courts' denial of his IAC claim was contrary to or involved an unreasonable application of *Strickland*. The crux of Pierce's complaint

against counsel is aimed at trial strategy.  Counsel has responsibility for making

decisions about strategy and tactics and is not bound by the instructions or wishes

of the client on such matters:

> Trial management is the lawyer's province: Counsel provides his or her
> assistance by making decisions such as 'what arguments to pursue, what
> evidentiary objections to raise, and what agreements to conclude regarding
> the admission of evidence.'

*McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500, 1508 (2018) (*quoting*

*Gonzalez v. United States*, 553 U.S. 242, 248 (2008)) (identifying "whether to

plead guilty, waive the right to a jury trial [right to] testify in one's own behalf, and

forgo and appeal" as the exceptions to this general rule).  The decision of whether

to interview M.R. and her mother before trial, or instead, to rely upon their prior

statements, fell within counsel's province.  Also, within trial counsel's discretion,

was the manner within which to use, if at all, the prior statements for impeachment

purposes.

As a preliminary matter, Pierce persists in his belief that the State

"suppressed" the transcripts of M.R.'s forensic interviews from being introduced at

trial.  *See e.g*., (Doc. 5 at 74, 76.)  The Court disagrees. The State indicated that

they had no intention of introducing the transcripts or recordings of the interviews,

but that comments made in the interviews could be introduced as prior consistent

or inconsistent statements, as needed, to either impeach or rehabilitate a witness.

*See* (Doc. 25-13 at 31-2.)  The Montana state district court also discussed during

the pretrial conference the manner in which prior consistent or inconsistent statements could be used by the parties during trial.  (Doc. 25-15 at 40: 2-22.) Moreover, Pierce fails to show what counsel should have done, or what information counsel should have obtained, in the place of that which was presented to the jury.  Pierce posits in these claims that counsel could have done more or taken a different approach during trial.  Pierce fails to identify any acts counsel could have undertaken that would have pointed to his innocence.

Pierce points to a section of the trial transcript where counsel was attempting to use a prior transcript of an interview given by M.R. to highlight an inconsistency.  *See* (Doc. 5 at 78.)  Pierce points to an objection the State made relative to the form of trial counsel's question. *See* (*id*. at 78.) Pierce omits the remainder of the exchange.  Defense counsel obtained a concession from M.R. that she was unsure about which month the first instance of sexual abuse occurred. (Doc. 25-18 at 112: 24-25 to 113:1-13.)  The other evidence Pierce presents in support of his deficient performance argument relates to his interpretation of rulings in his § 1983 case. Pierce suggests that this Court impliedly found his convictions to be invalid.  *See* (Doc. 5 at 75-77.)  Pierce provides inaccurate and unsupported representations of what occurred, and fails to support his deficient performance argument.

In short, Pierce has not overcome the presumption that counsel's actions in

the present case "might be considered sound trial strategy."  *See Strickland*, 466

U.S. at 689.  Pierce has not shown under § 2254(d) that the Montana Supreme

Court unreasonably applied the first prong of *Strickland* to the facts of his case.

This Court need not examine the prejudice prong when deficient performance has

not been established.  *Id*. at 687.  Nonetheless, this Court will endeavor to do so.

Pierce's prejudice argument proves somewhat difficult to follow.  Pierce

suggests that he was prejudiced by defense counsel handing the State a copy of

M.R.'s forensic interview transcript, but then failing to use the same or introduce it

into evidence.  (Doc. 5 at 82.)  Pierce conflates the cause and prejudice analysis

associated with procedural default as it was applied in *Martinez v. Ryan*, 566 U.S.

1 (2012), with the prejudice prong of *Strickland*.  (*Id*. at 83.)  Pierce seems to

believe that because he was not represented by counsel during his postconviction

proceedings, he is not required to make a showing of prejudice under *Strickland*, as

it relates to his IAC claim.  (*Id*.)  Pierce is mistaken.

Prejudice requires a showing of a reasonable probability that the result of the

proceeding would have been different absent the error, that is "a probability

sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

Given the double deference accorded to the Montana state court opinion, Pierce

has failed to show that it was objectively unreasonable for the Montana state court

to find no reasonable probability exists that the outcome of his trial would have

been different had counsel interviewed M.R. or her mother, or had counsel sought to introduce transcripts of M.R.'s forensic interviews.  The adjudication of this claim was objectively reasonable under 28 U.S.C. §2254(d) and will be afforded deference.

  iii. **Claim 6- State's Use of Perjured Testimony**

   In his federal filing, Pierce claims that differences in statements made by M.R. and her mother pre-trial, during trial, and post-trial are "profound."  (Doc. 5 at 85.)  For example, Pierce states that during trial, M.R.'s mother testified that she had known Officer Sather since she was little, they dated at one time, and have remained friends over the years.  (Doc. 5 at 91.)  Pierce then states that in the civil case, M.R.'s mother denied these same statements.  (*Id*. at 91-92.)  Pierce also claims that M.R. stated that her mother instructed her to say Pierce had "touched her." ( *Id*. at 92.)  Pierce asserts M.R. stated that on one occasion he took her pants off, but later testified that he just unbuttoned her jeans.  Pierce also suggests that M.R. told two different versions of events: Pierce either "touched" her or "fingered" her.  (*Id*.) The implication being that a difference exists between the two terms, and that one of them does not meet the legal definition of Sexual Intercourse without Consent.  (*Id*. at 93.)

   Pierce also claims that M.R. told different accounts of what occurred between her and her older brother after she disclosed Pierce's abuse. M.R. stated

her brother Anthony wanted to "slit her throat" or, alternatively, have her take a lie detector test. (*Id*.)  Pierce also posits that M.R. and her mother must have prepared their initial reports to law enforcement together, due to similarities contained within both. (*Id*. at 94.)  In support of this contention, Pierce claims the only reason M.R. would have known about a picture of a photo of her former babysitter/friend, "Trina," in her bra and panties that Pierce took, would have been if M.R. saw her mother's statement to law enforcement. Pierce cites to these examples to assert that the case against him was built on a "foundation of perjury" that the prosecution deliberately kept from the jury.  (*Id*.)

In Pierce's PCR proceedings, the Montana state district court determined that any claim Pierce made that the State impermissibly used the victim's pretrial statements at trial and/or prevented him from using such statements were record based.  Pierce waived these claims when he failed to raise the claims on appeal. (Doc. 25-80 at 7.)  Further, to the extent that Pierce claimed the State allowed false evidence from M.R. concerning the photograph of the woman she knew, such claims were refuted by the record.  (*Id*. at 8.)

Pierce argued on appeal that M.R.'s prior statements established the falsity of her trial testimony. Pierce contends that the State violated his right to due process by allowing the purportedly false testimony.  The Montana Supreme Court rejected the claim and held that Pierce's use of M.R.'s statements out of context

did not demonstrate that M.R.'s accusations were false or that the prosecutors knowingly had presented false testimony.  *Pierce III*, 2019 MT 124N, at 7, ⁋ 13

"[A] conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. People of State of Illl*., 360 U.S. 264, 269 (1959).  The same is true where the state, "although not soliciting false evidence, allows it to go uncorrected when it appears."  *Id*.  To prevail on a claim of the presentation of false evidence, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence] was material."  *Hein v. Sullivan*, 601 F. 3d 897, 908 (9th Cir. 2010) (quotations omitted).  False evidence is material "if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury."  *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Pierce has failed to establish that the State knowingly presented false or misleading evidence during the testimony of M.R. or her mother.  Pierce provides his own interpretation of cherry-picked statements made by both witnesses at various stages of his proceedings.  Pierce suggests that shifts in their accounts of events demonstrate an unreliability or that M.R.'s mother unduly pressured M.R. into accusing Pierce.  Pierce's own conclusory statements regarding purported

changes in statements or subsequent trial testimony do not demonstrate their falsity

with any degree of certainty.  Pierce has not demonstrated the State knew of any

fabrication or had unclean hands in presenting the same.  Pierce has presented no

evidence, aside from his own assertions, to show that the State relied upon false

testimony.  No corresponding requirement forced the State to correct testimony

provided by M.R. or her mother.  *Napue*, 360 U.S. at 269.

Both the Montana state district court and the Montana Supreme Court

rejected Pierce's claim that the State knew or should have known that this

testimony was "perjured."  It is not the role of this Court to reassess credibility

judgments or weigh potentially conflicting testimony unless the underlying

decision "was based on an unreasonable determination of the facts."  28 U.S.C. §

2254(d).  Pierce has not demonstrated that the Montana state court decision was

unreasonable. This claim also fails under the deferential standard of review.

### iv.     Claim 8- IAC of appellate counsel

Pierce claimed that appellate counsel provided deficient performance when

she failed to raise a confrontation clause claim challenging M.R.'s pretrial forensic

interview that was not introduced as evidence during trial.  (Doc. 5 at 119.)

Applying *Strickland*, the Montana state district court first found that Pierce

presented no evidence to support his claim that appellate counsel's performance

fell below an objective standard of reasonableness.  (Doc. 25-80 at 10.)  Pierce's

disagreement with appellate counsel's decision, with the benefit of hindsight, did not suggest that appellate counsel performed deficiently.  *Id*.  Pierce also failed to offer any evidence to show how the issue surrounding the admission of the transcript was a stronger claim than the two claims counsel presented on appeal. Even if Pierce were able to make such a showing, however, the district court found he had failed to establish that but for appellate counsel's ineffective performance, he would have prevailed on appeal.  *Id*.  Pierce could not meet the showing under *Strickland's* prejudice prong.  Pierce entirely failed to support his conclusion with any legal argument regarding the likelihood of success on appeal of this omitted claim.  *Id*.

The Montana Supreme Court affirmed the Montana district court's ruling. The Montana Supreme Court noted that appellate counsel has "has no constitutional obligation to raise every non-frivolous issue on appeal" and the "presumption of effective assistance of counsel will be overcome only when ignored issues are clearly stronger than those presented."  *Pierce III*., 2019 MT 124N, at 6, ¶ 11, *citing DuBray v. State*, 2008 MT 121, ℙ 31, 342 Mont. 520, 182 P. 3d 753.  The Montana Supreme Court concluded that Pierce presented no evidence, aside from his own conclusory statements, that would tend to show the confrontation clause issue was stronger than those counsel presented on appeal or that he was prejudiced by counsel's failure to raise the claim.  *Id*. at 6-7, ℙ 11.

These findings were reasonable.

The Sixth Amendment guarantees the right to effective representation on direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Strickland*, 466 U.S. at 689. Effective legal assistance does not mean that appellate counsel must appeal every question of law and raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751-754 (1983). Appellate counsel's performance must meet prevailing professional norms. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986).

Pierce argues that appellate counsel rendered ineffective assistance by failing to raise a "confrontation clause" claim on appeal. Pierce must show that appellate counsel's performance was objectively unreasonable, which requires him to demonstrate that counsel acted unreasonably in failing to discover and brief a meritorious issue. *Moorman v. Ryan*, 628 F. 3d 1102, 1106 (9th Cir. 2010). Pierce also has the burden of showing prejudice, by demonstrating a reasonable probability that, but for appellate counsel's failure to raise the confrontation clause claim, he would have prevailed in his appeal. *Id*. The Ninth Circuit has discussed the application of *Strickland* to ineffective assistance of appellate counsel claims:

> [t]hese two prongs partially overlap…In many instances, appellate counsel will fail to raise an issue because she foresees little or no

> likelihood of success on that issue; indeed, the weeding out of weaker
> issues is widely recognized as one of the hallmarks of effective
> appellate advocacy…Appellate counsel will therefore frequently
> remain above an objective standard of competence (prong one) and
> have caused her client no prejudice (prong two) for the same reason-
> because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F. 2d 1428, 1434 (9th Cir. 1989); *see also Bailey v. Newland*,

263 F. 3d 1022, 1028-29 (9th Cir. 2001).  The question for analysis is whether the

unraised issue, if raised, would have "led to a reasonable probability of reversal."

*Id*. at 1434-35.

The Confrontation Clause of the Sixth Amendment applies to the states

through the Due Process Clause of the Fourteenth Amendment.  The "main and

essential purpose of confrontation is to secure for the opponent the opportunity of

cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  A trial judge

is permitted to impose reasonable limits on cross-examination, without violating a

defendant's right to confrontation, based "on concerns about, among other things,

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation

that is repetitive or only marginally relevant."  *Delaware v. VanArdsall*, 475 U.S.

673, 679 (1986).  In sum, "the Confrontation clause guarantees only an *opportunity*

for effective cross-examination, not cross-examination that is effective in whatever

way, and to whatever extent the defense might wish."  *Delaware v. Fensterer*, 474

U.S. 15, 20 (1985) (emphasis in original).

Pierce's trial counsel actually filed a motion in limine to preclude admission

of or reference to M.R.'s forensic interview taken at First Step.  *See* (Doc. 25-13 at 30-31); *see also* (Doc 17-1 at 7.) The defense also noted that alterations or markings had been made on the copy of the transcript provided to them. (Doc. 25-13 at 31: 4-10.)  In response the State indicated that it did not intend to introduce the First Step interview, or a second interview performed of M.R., but that it might want to refer to particular comments made in the interviews as prior consistent or prior inconsistent statements as needed to either impeach or rehabilitate a witness. (*Id*. at 31-32.)  During a pretrial hearing, it was subsequently revealed that the markings on the transcript were made by one of the prosecutors; a clean copy was provided to the defense.  (*Id*. at 33.) The parties and the state district court agreed that the written transcript of M.R.'s First Step interview, either with markings or a clean copy, would not go to the jury.  (*Id*. at 34.)

At a subsequent pre-trial hearing, the Montana state district court discussed both parties being free to use prior consistent or inconsistent statements that were the subject of a recording, document, or transcript.  (Doc. 25-15 at 40:2-10.)  The Montana state district court did not put parameters of the use of such statements at trial, but rather reiterated to both parties that there needed to be an adequate foundation regarding the existence of the statement prior to presenting the same to the jury.  (*Id*. at 40: 19-22.)

A review of the record reveals that transcripts of M.R.'s interviews were not

"suppressed" by the State, and, in fact, it was defense counsel who sought to prevent introduction of the transcript of the Frist Step interview.  Both parties were free to use prior transcripts and written statements, as provided by the Rules of Evidence.  Nothing indicates that limitations were placed upon cross-examination of any witness, including M.R.  The circumstantial nature of this case and the fact that it would likely come down to the jury's determination of witness credibility was clear from the outset.  M.R. testified that Pierce inserted his fingers in her vagina while she was at Pierce's house, that he rubbed his penis against her leg, and that contact of a sexual nature occurred on two separate occasions during stays at hotels in Missoula and Kalispell.   Pierce denied all of these events.  Pierce's counsel performed an extensive cross-examination of M.R. (Doc. 25-18 at 95-121.) Pierce testified on his own behalf and refuted M.R.'s statements.  (Doc. 25-20 at 55-72.) In light of the record, Pierce has not demonstrated that his right to confrontation has been violated.

Pierce may disagree with appellate counsel's assessment of his confrontation claim. Pierce has failed to demonstrate that appellate counsel's performance was objectively unreasonable when she elected not to raise this claim.  Pierce fails to make the requisite showing of deficient performance under *Strickland's* first prong. Pierce's failure to show a confrontation clause violation occurred in the underlying case prevents him from showing prejudice as required under *Strickland*'s second

prong. Pierce has not demonstrated a reasonable probability that, but for appellate counsel's failure to raise a confrontation challenge, he would have prevailed on appeal. Under this Court's "doubly deferential" review, Pierce's claim necessarily fails. *See Pinholster*, 563 U.S. 190. The Montana state courts reasonably denied this claim.

### v.  Claim 10- False Grooming Evidence

Pierce argues that the "grooming" evidence presented to the jury during his trial was false. This evidence included the following: Pierce gifting M.R. with thong underwear, Pierce showing M.R. sexual photos he took of women at an outdoor concert, and Pierce showing M.R. pornographic images on his computer. (Doc. 5 at 137.) In support of his argument, Pierce asserts that although the photographs were taken of the women at the Rockin' the Rivers concert in August of 2005, forensics analysis of the computer establishes that the photos were not accessed until 2010-2011, after the abuse of M.R. had occurred. (*Id*. at 138.) Similarly, Pierce argues that no pornography was recovered from his electronic devices. Also, Pierce claims M.R. testified that he gave her the underwear when she was in sixth or seventh grade, which was also after the time-period during which the sexual abuse was alleged. (*Id*. at 139.) Pierce contends the "grooming evidence" proved false because he could not have groomed M.R. after she had already been abused. (*Id*. at 140.)

The Montana state district court found that Pierce offered only vague and conclusory statements regarding the State's presentation of the "false grooming" evidence. (Doc. 25-80 at 7-8.) The Montana state district court noted that the record refuted Pierce's claims that the State made false argument in response to his pretrial motions or presented false testimony from the victim at trial concerning a photograph depicting a woman she knew in her bra and panties. *Id*. at 8. Pierce's argument that there were inconsistencies between M.R.'s trial testimony and that of her mother concerning whether Pierce provided M.R. with thong underwear, as opposed to showing her pictures of thong underwear in a Victoria's Secret catalogue, was a matter properly resolved by the jury in assessing the weight and credibility of the witnesses. *Id*. Pierce's claim that the trial court impermissibly allowed the State to introduce evidence that he possessed women's underwear and provided the same to M.R. was record-based, and because it was not raised on appeal, it was waived. *Id*.

The Montana Supreme Court did not specifically address this claim, but held generally that Pierce's due process rights were not violated by M.R.'s purportedly false testimony. *See Pierce III*, 2019 MT 124N, at 7, ¶ 13. Under AEDPA, when a state court does not explain the reason for its decision, this Court must "look through" to the last state-court decision that provides a reasoned explanation capable of review. *Murray v. Schriro*, 745 F. 3d 984, 996 (9th Cir. 2014.) In this

instance, that is the Montana state district court's decision in the PCR proceedings.

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the federal standard for determining the sufficiency of the evidence to support a jury finding. Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original); *see also Coleman v. Johnson*, 566 U.S. 650, 656 (2010)(per curiam)("the only question under *Jackson* is whether that finding was so insupportable so as to fall below the threshold of bare rationality"). The Court "must respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming the jury resolved all such matters in a manner which supports the verdict." *United States v. Kilby*, 443 F. 3d 1135, 1140 (9th Cir. 2006). Finally, when a case is governed by Section 2254(d), the federal habeas court must "apply the standards of *Jackson* with an additional layer of deference." *Juan H. Allen*, 408 F. 3d 1262, 1274 (9th Cir. 2005); *see also Johnson*, 556 U.S. at 651 ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings

because they are subject to two layers of judicial deference.").

A review of the record shows that the Montana state district court reasonably denied this claim.  M.R. testified that beginning in second grade, she would look through the Victoria's Secret catalogue, which primarily depicted adult women's lingerie and swimwear, with Pierce and her grandmother.  (Doc. 25-18 at 63-4.) M.R. indicated that Pierce would tell her, at a young age, which thongs and swimming suits she "would look sexiest in."  (*Id*. at 64:8-10.)  This prompted M.R. to want to own adult thong-type underwear and caused arguments between her and her mother.  (*Id*. at 64:11-17.)  M.R. testified that Pierce purchased underwear for her a couple times when she was older, but one time "when [she] was littler."  (*Id*. at 65:8-12.)  The first time Pierce gave M.R. thong underwear, she hid the fact from her mother.  (*Id*. at 65:18-25.)  The State introduced into evidence a pair of underwear that Pierce gifted M.R. when she believed she was in fifth or sixth grade.  (*Id*. at 66:3-12.)

M.R.'s mother testified that M.R. would look at Victoria's Secret catalogs with Pierce and that beginning in the third grade, M.R. began requesting thong underwear and adult-style swimsuits.  (*Id*. at 230.)  Even though she refused to purchase the underwear for her daughter, Pierce would buy them for her.  (*Id*. at 230:1-3.)  M.R.'s mother turned over a pair of underwear Pierce had purchased for M.R. to law enforcement during the underlying investigation.  (*Id*. at 251-2.)

M.R. also testified that Pierce showed her a picture of her friend and former babysitter, "Trina," that he had taken at the Rockin' the Rivers outdoor concert event. (*Id*. at 68:6-16; 23-25.)  Trina was wearing nothing but her bra and underwear in the photo. (*Id*. at 67:18-25.)  M.R. testified that Pierce also showed her pornographic videos. (*Id*. at 68:2-5.)  No pornographic videos were recovered from Pierce's electronic devices, but the photo of Trina from Rockin' the Rivers was located on Pierce's computer and introduced into evidence. *See e.g.,* (Doc. 25-19 at 77-82.)

The Montana state district court noted that Pierce used a "shotgun approach" in making his claim regarding "false grooming evidence," and sought to support his claim with allegations rather than facts. (Doc. 25-80 at 8.)  The Montana state district court determined that any inconsistencies between the testimony provided by M.R. and her mother properly were resolved by the jury in "assessing the weight and credibility of the witnesses." (*Id*.)  The Court agrees.  Pierce essentially asks this Court to reweigh the evidence and find that his testimony was more credible than M.R.'s or her mother's testimony.  Pierce ignores the rules governing this Court's doubly deferential review under *Jackson* and Section 2254(d).  Pierce also ignores the premise that the jury's credibility determinations are entitled to "near-total deference" under *Jackson*.  *Bruce v. Terhune*, 376 F. 3d 950, 957 (9th Cir. 2004); *see also Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("under

*Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review").

Even if inconsistencies existed between M.R. and her mother's testimony about the timing of Pierce gifting M.R. underwear, it was up to the jury to make a credibility determination and assess what weight to assign the testimony. The jury similarly was tasked with giving weight to M.R.'s testimony that Pierce showed her pornography and the photo of Trina, in the face of forensic analysis that only the photo was recovered. Pierce consistently denied culpability. M.R. consistently placed blame upon Pierce. The testimony of a single witness, if believed, is sufficient to support a conviction. *See United States v. Larios*, 640 F. 2d 938, 940 (9th Cir. 1981). Further, any discrepancies or issues with respect to the believability of the witness testimony were factors for the jury to consider. *See Jones v. Wood*, 207 F. 3d 557, 564 (9th Cir. 2000) (finding that in the context of performing *Jackson* review, determining witness credibility is a "key question for a jury."). Accordingly, the state court's decision on this claim was not objectively unreasonable, and Section 2254(d) precludes federal review of this claim.

### vi.    Claim 11- Cumulative Error

The Montana state district court found that Pierce merely repeated his allegations of error and misconduct that he ascribed to the State, the trial court, trial counsel, and witnesses, but failed to offer evidence to support his claims.

Pierce instead relied on individual conclusions.  (Doc. 25-80 at 12.)  Pierce does the same before this Court.  *See* (Doc. 5 at 142-43.)  Pierce is unable to establish a single constitutional error in this case. Nothing exists to accumulate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F. 3d 939, 957 (9th Cir. 2002).  The Montana state court decision in this regard will be afforded deference.

## VI.    Certificate of Appealability

A prisoner seeking relief under § 2254 may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(3).  A prisoner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issue presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court finds that Pierce has not made a substantial showing of the denial of a constitutional right or that it erred in its procedural rulings.  A certificate of appealability will not be issued in this action. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## VII.   Outstanding Motions

### i.        Motion for Order

In his Motion for Order (Doc. 40), Pierce requests an order from this Court directing the State to respond to his amended petition or, alternatively, that a ruling be made either denying or issuing Pierce a writ of habeas corpus.  Pierce's request will be denied as moot, based upon the denial of the petition discussed herein.

### ii.       Motion Under Rule 60(b)

Pierce requests that this Court grant him relief from his present judgment of conviction because it is void and based upon false information.  (Doc. 42.)  Rule 60(b) provides relief from final judgment based on a mistake, newly discovered evidence, fraud, a void judgment, a discharged judgment, or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1)-(6).  This avenue applies only to challenge a final federal court order or judgment.  This rule does not authorize an "independent" pleading, but the claim must be asserted in the form of a motion in the same federal cause number of the challenged final order or judgment.  At the time of Pierce filing his Rule 60 motion, no final order or judgment had been entered in the present case.  Moreover, Rule 60(b) does not apply as a federal challenge to a state court order or judgment.  *Holder v. Simon*, 384 Fed. Appx. 660 (9th Cir. 2010 (unpublished) ("Rule 60(b) does not provide a basis for subject matter jurisdiction over a claim for relief from a state court judgment.").  This

motion will be denied.

### iii.   Motion to Appoint Counsel

Pierce requests that counsel be appointed to represent him.  (Doc. 48.)
Pierce cites the delay in resolution of this matter and his belief that the State
continues to make false or misleading statements to the Court.  (*Id*. at 1.)  The
Court would note that while the State has been required to file documents from the
Montana state court record, it has not been served with Pierce's Amended Petition
nor has it been required to file an Answer in this matter.

Counsel must be appointed "when the case is so complex that due process
violations will occur absent the presence of counsel," *Bonin v. Vazquez*, 999 F. 2d
425, 428-29 (9th Cir. 1993) (*discussing Chaney v. Lewis*, 801 F. 2d 1191, 1196
(9thCir. 1986) (per curiam)), or when an evidentiary hearing is required, Rule 8(c),
Rules Governing § 2254 Cases.  Counsel may be appointed at any stage of the
proceedings if "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).
Under § 3006A, the court must consider the likelihood of success on the merits, the
complexity of the legal issues involved, and the petitioner's ability to articulate his
claims pro se.  *Weygandt v. Look*, 718 F. 2d 952, 954 (9th Cir. 1983)(per curiam).

The Court has determined that an evidentiary hearing is not necessary, so the
applicable Rule does not require that counsel be appointed.  Moreover, Pierce has
been able to effectively articulate his claims to this point.  This Order explains the

basis for the denial and dismissal of Pierce's petition.  There are no further considerations to be made at this juncture, the request for counsel will be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1.  The Amended Petition (Doc. 5) is **DENIED and DISMISSED**.

2.  The Motion for Order (Doc. 40) is **DENIED**.

3.  The Rule 60(b) Motion (Doc. 42) is **DENIED**.

4.  The Motion to Appoint Counsel (Doc. 48) is **DENIED**.

5.  The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

6.  A certificate of appealability is **DENIED**.

DATED this 15th day of December, 2023.

_____
Brian Morris, Chief District Judge
United States District Court